328 So.2d 144 (1976)
STATE of Louisiana
v.
Charles Leonard ALEXANDER.
No. 56951.
Supreme Court of Louisiana.
February 23, 1976.
A. K. Goff, Jr., Charles C. Barham, Ruston, for defendant-appellant.
*145 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., O. L. Waltman, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Lincoln Parish Grand Jury indicted Charles Leonard Alexander with first degree murder in violation of LSA-R.S. 14:30. He was tried and found guilty of second degree murder. The trial judge sentenced him to life imprisonment. Defendant appeals his conviction and sentence, relying on four assignments of error.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
In brief, defendant consolidates Assignments of Error Nos. 1 and 2; both relate to the questioning of prospective jurors concerning the death penalty. Defendant argues that it was error for the trial court to allow the State to question prospective jurors to determine whether their conscientious scruples against the infliction of capital punishment would automatically require them to vote against a capital verdict without regard to the evidence.
The questions propounded follow the guidelines established in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 766 (1968) as codified in Article 798 of the Louisiana Code of Criminal Procedure, providing in pertinent part:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
"* * * * * *
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt;"
Since Witherspoon and the amendment of Article 798 of the Louisiana Code of Criminal Procedure to conform thereto, this Court has consistently held that a juror can be challenged for cause when he would automatically vote against a capital verdict irrespective of the evidence at the trial. State v. Batiste, La., 318 So.2d 27 (1975); State v. Brown, La., 302 So.2d 290 (1974); State v. Hayes, La., 271 So.2d 525 (1973). The record reflects that all the excused jurors fell into this category.
In any event, since the sentence imposed was life imprisonment, the trial judge committed no reversible error in excusing prospective jurors because of their attitude toward capital punishment. This Court has consistently held that the rule announced in Witherspoon, designed to reprobate the "hanging jury," is irrelevant when the sentence imposed is life imprisonment. State v. Brown, supra State v. Fallon, La., 290 So.2d 273 (1974); State v. Shilow, 252 La. 1105, 215 So.2d 828 (1968).
Assignments of Error Nos. 1 and 2 are without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant assigns as error the ruling of the trial court denying his motion to suppress and admitting into evidence his taped confession. He specifically objects to the admissibility of the tape recorded confession as violative of LSA-R.S. 15:451, which requires the State to prove that the confession was "free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." In addition, defendant complains that the taped confession was inaudible and that the court *146 should have allowed him to introduce the typed transcription of the tape recorded confession into evidence at the trial.
The defendant bases this assignment of error upon the following:
(1) The State's failure to fully explain, in clear and express language, to the defendant his constitutional rights as required by the holding in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
(2) The State's failure to apprise the defendant on the night of February 6, 1975, that he was going to be interrogated about the instant charge of murder.
(3) The State's failure to show that the defendant clearly and intelligently waived his constitutional rights.
In a motion to suppress a confession or inculpatory statement, the State has the burden of proving the confession was freely and voluntarily given. LSA-C.Cr.P. Art. 703. In addition, the United States Supreme Court decision in Miranda v. Arizona, supra, requires that the State establish that the defendant was advised of his rights, including the right to counsel, but waived these rights.
The testimony adduced at the hearing on the motion to suppress reflects that:
On February 3, 1975, Chief of Police Perry Roberts questioned defendant in Winnfield, Louisiana, concerning forgery charges pending against him in Winn Parish. At this interrogation for the forgery charges, the defendant was read his Miranda rights. Defendant was not in custody at that time.
The next day, defendant returned to the police station in Winnfield, indicated to Chief Roberts that he and Thornton Lee Paul had stopped and purchased gasoline at a service station in Ruston on December 7, 1974. On December 7, 1974, Charles David Foxworth was killed while working at the Shady Tree Auto Parts Store in Ruston in the late afternoon. His body was found by the cash register.
Because of this fact, Chief Roberts asked Alexander if he would drive with him from Winnfield to Ruston and point out the place where the defendant and Thornton Lee Paul had stopped to purchase gas. Defendant, after being advised of his Miranda rights, was taken by Chief Roberts to Ruston, where he pointed out the Shady Tree Auto Parts Store as the station where they had purchased gas. Defendant was then taken to the Ruston Police Station where he was questioned.
On February 5, 1975, Thornton Lee Paul made a statement to Chief Roberts, implicating himself and Alexander in the Foxworth murder. On the basis of that statement, a warrant was issued for the defendant's arrest. Alexander voluntarily came to the police station in Winnfield and was arrested. Chief Roberts read Alexander his rights, and Alexander signed a waiver of rights form.
On February 6, 1975, a deputy sheriff from Jackson Parish arrived in Ruston to question defendant about an armed robbery in Jonesboro. Defendant was brought from the jail to an interrogation room and was informed of his Miranda rights. At some time during this interrogation about the armed robbery in Jonesboro, defendant made an inculpatory statement with regard to the Foxworth murder. The Ruston officer present at the interrogation discussed the fact that Thornton Lee Paul had made a statement with the defendant. Defendant said that he was not the one who shot Foxworth. The questioning of the defendant by the officers terminated.
The next morning, February 7, 1975, the defendant was again brought from his cell and asked to recount to Chief Roberts of Ruston the facts he had told the officer at the questioning the night before. He was again informed of his Miranda rights. The *147 morning interrogation was interrupted. After lunch, the defendant was again informed of his Miranda rights. At 2:45 that afternoon, the taped interrogation which forms the basis of this assignment of error was initiated.
The record contains no evidence of mistreatment, threats, or coercion being used to induce the defendant to confess. In addition, there is no evidence to support the defendant's allegation that he did not clearly and intelligently waive his constitutional rights. It appears that the defendant was informed of his constitutional rights several times. At one point, when he was being informed of his rights, he told Deputy George Simonton that he knew his rights, he understood what was on the waiver of rights form and would read over the form himself and sign it.
Unless clearly erroneous, a factual determination by the trial judge that a confession was not the product of threats or promises and that it was freely and voluntarily made will not be disturbed on appeal. State v. Sims, La., 310 So.2d 587 (1975); State v. Cosey, 261 La. 550, 260 So.2d 620 (1972). We conclude that the ruling of the trial judge admitting the confession was correct.
We have also listened to the defendant's tape recorded confession. It is audible and thus there was no necessity for the admission into evidence of the transcription of the tape. The trial court properly ruled that the defendant's tape recorded confession is the best evidence. LSA-R.S. 15:436.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
In Assignment of Error No. 4, the defendant contends that the trial court erred in allowing the introduction of two colored photographs into evidence. The photographs depict the scene of the crime, including splotches of blood on the floor after the victim's body had been removed. Defendant argues that the photographs were unnecessary because there were four witnesses who could testify as to the location of the body behind the counter immediately below the cash register.
The State argues that the exhibits had probative value in showing the proximity of the body to the cash register as part of the proof relating to the armed robbery.
The test for the admissibility of a photograph of this nature is whether the probative value of the photograph outweighs its probable inflammatory effect. State v. Beach, La., 320 So.2d 142 (1975); State v. Chavers, La., 294 So.2d 489 (1974); State v. Curry, La., 292 So.2d 212 (1974).
There can be no doubt that the photographs have substantial probative value in the present case. The defendant was charged with first degree murder under Paragraph (1) of LSA-R.S. 14:30. For conviction, the State must establish that defendant was engaged in the perpetration or attempted perpetration of armed robbery at the time of the homicide. The photographs were relevant to corroborate testimony and show exactly where the deceased victim of the armed robbery was when he was shot.
In his Per Curiam, the trial judge correctly disposes of this assignment of error as follows:
"In the case at bar the State was contending that the defendant was in the act of committing an armed robbery when he killed the victim. The photographs in question were introduced in evidence to show the location of the victim's body with reference to the cash register from which the defendant allegedly took money. Since the State was relying to a large extent upon this circumstantial evidence to discharge its burden of proof I *148 concluded that the probative value of the photographs outweighed their prejudicial effect."
This Court has consistently held that the admission of photographs rests in the discretion of the trial court judge and that his holding will not be disturbed in the absence of a clear abuse of this discretion. State v. Gibson, La., 271 So.2d 868 (1973); State v. LaCoste, 256 La. 697, 237 So.2d 871 (1970); State v. Ford, 259 La. 1037, 254 So.2d 457 (1971).
We hold that the trial court did not abuse its discretion in admitting the photographs into evidence.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
TATE, J., assigns additional concurring reasons.
CALOGERO, J., concurs for reasons assigned by TATE, J.
TATE, Justice (concurring).
I concur in the affirmance and in the disposition of all the assignments of error.
However, in my opinion, the erroneous exclusion of jurors who merely have reservations against the death penalty, contrary to state statute, La.C.Cr.P. art. 798(2) (1968), is not harmless because the jury only imposes life imprisonment instead of the death penalty. When jurors are excluded in violation of state law, the accused is deprived of the cross-section of the population to which he is entitled.
No error here occurred because, in fact, the present jurors were properly excusable, since opposed to the death penalty under all circumstances. The majority correctly so finds.
Nevertheless, by way of dicta, the majority opinion suggests that, at any rate, even if the prosecution (contrary to law) excluded from the jury those with mere reservations on the subject, no reversible error would result. To do so, would allow the state more peremptory challenges than the law allows. La.C.Cr.P. art. 800. This is cause for reversal, as the code article recognizes.
In support of this dicta, the majority cites decisions based on jurisprudence before our state code article was so amended. Then, under the United States Supreme Court decision in Witherspoon, the death penalty (but not the conviction itself) was invalid as in violation of federal constitutional rights. Accordingly, when a Witherspoon violation was alleged, we found that (under then state law, which permitted exclusion of jurors merely for deathpenalty reservations) no Witherspoon issue was involved if only a life penalty resulted. This was, of course, because the sole remedy recognized by Witherspoon was the reduction of the death penalty to life imprisonment.
An entirely different issue is presented if under present state law a juror is improperly excluded for such cause. La.C.Cr.P. art. 798(2). In such case, reversal is required, for the effect is to grant the state additional peremptory challenges if it has otherwise exhausted those allowed by law. La.C.Cr.P. art. 800.
The dicta in the majority opinion is therefore misleading and incorrect, in my opinion.