363 So.2d 481 (1978)
STATE of Louisiana
v.
Jessie Lee WILSON.
No. 61892.
Supreme Court of Louisiana.
October 9, 1978.
*482 Alton T. Moran, Director, Allen J. Bergeron, Jr., Appellate Counsel, Frank Fertitta and Darrell D. White, Trial Attys., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
On June 2, 1975, a grand jury indicted defendant, Jessie Lee Wilson, for aggravated rape. The indictment charged that the crime occurred on or about May 8, 1975. Defendant's first trial, which ended in a mistrial, commenced on February 2, 1976. Immediately prior to defendant's second trial on September 19, 1977, the prosecutor amended the indictment to charge defendant with attempted aggravated rape. The jury found defendant guilty as charged on September 22, 1977. The trial judge sentenced defendant to forty years' imprisonment.
On appeal, defendant relies upon six assignments of error for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
Here, defendant contends that the trial court erred in denying his motion to quash based upon the expiration of the time limitation for trial set forth in Article 578 of the Louisiana Code of Criminal Procedure. He also argues that he was denied his constitutional right to a speedy trial by the long delay between the time prosecution was instituted and the verdict in his case.
Article 578 of the Louisiana Code of Criminal Procedure provides:
"Except as otherwise provided in this Chapter, no trial shall be commenced:
"(1) In capital cases after three years from the date of institution of the prosecution;
"(2) In other felony cases after two years from the date of institution of the prosecution; and
"(3) In misdemeanor cases after one year from the date of institution of the prosecution.
"The offense charged shall determine the applicable limitation."
*483 Defendant argues that the amendment of the indictment to reflect attempted aggravated rape, rather than aggravated rape, made the two-year limitation applicable to his case rather than the three-year limitation applicable to capital cases. This argument is without merit.
Under Article 578, the offense charged in the indictment determines the applicable limitation; the applicable limitation for capital offenses is three years from institution of prosecution. We have repeatedly held that the State may abandon the greater crime charged in an indictment and proceed to trial only on a lesser offense. State v. Gilmore, La., 332 So.2d 789 (1976); State v. Edwards, La., 287 So.2d 518 (1973); State v. Ford, 259 La. 1037, 254 So.2d 457 (1971); State v. Doucet, 177 La. 63, 147 So. 500 (1933); State v. Kelly, 176 La. 405, 146 So. 6 (1933). As attempted aggravated rape is a lesser included offense, the State properly elected to press only the lesser charge. This action had no effect on the three-year time limitation. The trial court properly overruled the motion on this ground.
Alternatively, defendant contends that he was denied his constitutional right to speedy trial. He relies upon Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), holding that the factors to be considered are the length of the delay, the reasons for the delay, the resulting prejudice to the defendant, and the defendant's assertion of his right to a speedy trial.
The record affirmatively shows that the defendant himself occasioned many of the delays and did not assert his right to a speedy trial until shortly before he was brought to trial the second time. Furthermore, the defendant has demonstrated no prejudice. Hence, this contention is likewise untenable.
Assignments of Error Nos. 4 and 5 are without merit.

ASSIGNMENT OF ERROR NO. 8
Defense counsel argues in this assignment of error that the district court impermissively curtailed his examination of prospective jurors on voir dire.
He bases this assignment of error on the court's refusal to allow him to ask the following question of a prospective juror:
"Mr. Moreau has already indicated that the defendant in a criminal trial, the accused, stands at this junction presumed innocent in the eyes of the law and that presumption is over, can only be overcome by competent evidence from the witness stand that satisfies every reasonable doubt. So if you're convinced to a moral certainty of his guilt. . . ."
The expression "convinced to a moral certainty" is frequently used as a synonym of "proof beyond a reasonable doubt" in defining that burden of proof. See Gray v. State, 56 Okl.Cr. 208, 38 P.2d 967 (1934). The phrase, however, does not mean certainty. Hence, it may be misleading when used without further explanation in voir dire examination. As the court stated in Gray v. State, supra, it is not likely to assist the jury.
We note that the trial judge did allow counsel ample opportunity to question the jurors as to the presumption of innocence and the burden of proving guilt beyond a reasonable doubt. Tr. 65, 69, 120, 144. During voir dire examination, the trial judge likewise instructed the jurors as to the presumption of innocence and the burden of proof. Tr. 37, 43.
In our opinion, the trial judge did not abuse his discretion in disallowing the question.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 20 AND 21
Here, defendant alleges that the victim's reference to defendant's telling her that "he had been to Angola" constituted impermissible reference to other crimes which warranted a mistrial. He argues that the trial court's refusal to order a mistrial constituted reversible error.
*484 The testimony came about in the following manner: The victim of the charged offense testified at trial that she had a lengthy conversation with the defendant at the time of the commission of the present offense. The conversation apparently occurred after the first rape but before the second. In the course of direct examination by the State, regarding the content of this conversation, the following exchange took place:
"A. . . . I asked him to tell me his name, and he wouldn't tell me his name. He had me believing from things that he had said that he was a man by the name of Perry Payne, a guy that I had heard of . . . And I believed him to be Perry Payne, but he said his name, his initials were `J.C.' or `J.S.,' but I knew the last name was Williams.
"* * *
"Q. What things did he say that made you think he was Perry Payne?
"A. He said that he had been to Angola."
Defense counsel at this point objected and moved for mistrial on the ground that the reference to Angola (the State Penitentiary) constituted inadmissible evidence of another crime. The trial court denied the motion for a mistrial and denied a subsequent request from defense counsel for an admonition to the jury. The prosecutor argued that the reference was part of the res gestae and was, therefore, admissible.
LSA-R.S. 15:447 defines res gestae as follows:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
Defendant argues that the reference to Angola does not comprise part of the res gestae under LSA-R.S. 15:447 since the reference was to events remote in time and space. However, the defendant's own statements during the commission of a criminal act are the spontaneous words of a participant and comprise part of the res gestae under LSA-R.S. 15-447. State v. Sepulvado, La., 342 So.2d 630 (1977); State v. Williams, La., 331 So.2d 467 (1976); State v. McKinnon, La., 317 So.2d 184 (1975).
In the present case, the defendant's statement that he had been to Angola was made after he entered the victim's home armed with a dangerous weapon. The victim stated that she submitted to the defendant because she was in fear of her life since the defendant had already stated he had been in Angola. Thus, the defendant's statements were clearly part of the res gestae since they were made after the defendant entered the house armed with a dangerous weapon and before he raped the victim. Under LSA-R.S. 15:447, the res gestae is always admissible in evidence. State v. Morris, La., 340 So.2d 195 (1976); State v. Curry, La., 325 So.2d 598 (1976); State v. Hatch, La., 305 So.2d 497 (1975).
Under Louisiana Code of Criminal Procedure Article 770, a mistrial is mandated only when there is a reference to another crime regarding which evidence is inadmissible. Since the defendant's statements comprised part of the res gestae under LSA-R.S. 15:447, these statements are admissible and do not mandate a mistrial. State v. Madison, La., 345 So.2d 485 (1977); State v. McCoy, La., 337 So.2d 192 (1976).
Moreover, defendant's statements were relevant to a material issue in the case. Under LSA-R.S. 14:42, it was necessary for the State to prove that the victim was prevented from resisting by threats of great and immediate bodily harm. The defendant's statement to the victim before the rape that he had been in Angola tended to substantiate the victim's fear that the defendant would seriously harm her if she did not submit to him.
Defendant also contends that the probative value of other crimes, evidence which comprises part of the res gestae, must be balanced against its prejudicial effect *485 under State v. Moore, La., 278 So.2d 781 (1973) and State v. Prieur, La., 277 So.2d 126 (1973). However, both State v. Moore, supra, and State v. Prieur, supra, concerned evidence of other crimes admissible under the knowledge, intent, system exception rather than the res gestae exception. LSA-R.S. 15:447 clearly states that what forms part of the res gestae is always admissible in evidence. Other crimes evidence which forms part of the res gestae, particularly through the words and actions of the defendant himself, is admissible without balancing the probative value of the evidence against its prejudicial effect. State v. Madison, supra; State v. Brown, La., 340 So.2d 1306 (1976); State v. Brown, La., 321 So.2d 516 (1975).

ASSIGNMENT OF ERROR NO. 26
Defendant alleges that testimony of a State's witness, a deputy sheriff, constituted reference to previous inadmissible criminal activity on defendant's part.
The alleged error took place in the following context: The State called as a witness a deputy sheriff who participated in defendant's arrest. During the course of questioning regarding events subsequent to defendant's arrest, the following exchange took place between the prosecutor and the witness:
"Q. Okay. Did you conduct further investigation at the detective office?
"MR. WHITE: I object to the leading question.
"THE COURT: Don't lead your what did you do next.
"Q. What did you do there?
"A. We pulled a file.
"BY THE COURT:
"Q. What file?
"A. On Jessie Lee Wilson."
At this point, defense counsel moved for a mistrial and stated as grounds that ". . .it was inconceivable to the jury to conclude otherwise that there had been previous criminal activity committed on the part of Jessie Lee Wilson."
LSA-C.Cr.P. art. 770 provides, in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"* * *
"(2) Another crime committed or alleged to have been committed by the defendant to which evidence is not admissible;"
The trial judge denied the motion on the grounds the witness's statement was unsolicited, and, in any event, was harmless since the jury already was aware from competent testimony that defendant had been in the State Penitentiary.
We are not prepared to hold that the witness's answer was unresponsive to the trial judge's question. The second basis for his ruling, however, is sound.
The jury here already knew from prior testimony (see Assignments of Error Nos. 20 and 21) that defendant had been at the State Penitentiary.
In State v. Overton, La., 337 So.2d 1201 (1976), a police officer testified that as part of his investigation of the crime charged, he looked up the defendant's address in "our records and identification section." In affirming the conviction, we stated:
". . . [W]e agree with the trial judge that the recondite reference at issue here could not have suggested to the jury that defendant had a prior criminal record. As the witness testified out of the jury's presence, a person's name might be on file with the records and identification section for innocent reasons, such as involvement in a traffic accident. The ruling of the trial judge was correct."
The present case is a stronger one for rejecting the complaint. As in State v. Overton, supra, there is only a "recondite reference," normally not construed as a reference to a prior crime. Additionally, however, if the jury here construed the witness's response as referring to a prior crime, *486 it would undoubtedly be connected with the prior penitentiary term of which they were already aware.
The court offered, after denying the defense motion for mistrial, to give the jury an admonition regarding the testimony. Defense counsel refused the instruction. Under the totality of the circumstances, the ruling of the trial court was correct.
Assignment of Error No. 26 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents because of the treatment of Assignment No. 8.